Daniel B. Ravicher (*Pro Hac Vice*)
*dan@zeisler-law.com*
**ZEISLER PLLC**
80 SW 8th St., Ste 3110
Miami, FL 33130
Tel: (786) 505-1205

Sumana C. Wolf (SBN 267967)
*sumana@zeisler-law.com*
**ZEISLER PLLC**
524 Lorraine Blvd
Los Angeles, CA 90020
Tel: (310) 871-3383

*Attorneys for Petitioner PDF Solutions, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| PDF SOLUTIONS, INC.,<br><br>Petitioner,<br><br>v.<br><br>SMIC NEW TECHNOLOGY RESEARCH & DEVELOPMENT (SHANGHAI) CORPORATION F/K/A SMIC ADVANCED TECHNOLOGY RESEARCH & DEVELOPMENT (SHANGHAI) CORP.,<br><br>Respondent. | **Case 5:26-cv-02796-EKL**<br><br>**PETITIONER PDF SOLUTIONS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT SMIC NEW TECHNOLOGY'S MOTION TO DISMISS**<br><br>Petition Filed:  March 31, 2026<br>Trial Date:  None Set<br>Assigned to:  Hon. Eumi K. Lee |

**<u>STATEMENT OF THE ISSUES TO BE DECIDED (CIV. L.R. 7-4(a)(3))</u>**

1.    Whether the Petition to Confirm Arbitration Award was properly served?

2.    Whether the Court has personal jurisdiction over Respondent?

3.    Whether the Court should grant jurisdictional discovery?

Dated July 8, 2026                                **ZEISLER PLLC**

By: <u>*/s/ Daniel Ravicher*</u>
Daniel Ravicher

*Attorney for Petitioner PDF Solutions, Inc.*

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................................1

II.   STATEMENT OF FACTS .......................................................................................................2

    A.    Respondent Negotiated and Performed the Underlying Agreement In This District ......... 2

    B.    Notice of the Petition Was Served on Three Sets of Respondent's Counsel ..................... 6

III.  ARGUMENT .............................................................................................................................7

    A.    Petitioner Properly Served the Petition on Respondent ...................................................... 7

        1.    Rule 5, Not Rule 4, Governs Service of a Petition to Confirm Arbitration Award on a Foreign Party ............................................................................................................ 8

        2.    Petitioner Properly Served the Petition on Respondent's Attorneys .................... 10

    B.    The Court Has Personal Jurisdiction Over Respondent ...................................................... 11

        1.    The Court Has Specific Personal Jurisdiction Over Respondent ......................... 11

        2.    The Court Also Has General Jurisdiction Over Respondent ................................ 13

        3.    Jurisdictional Discovery Is Appropriate if the Court Is Unsure About Whether it Has Personal Jurisdiction Over Respondent ......................................................... 14

IV.   CONCLUSION .......................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Daimler AG v. Bauman*,
571 U.S. 117 (2014)..................................................................................................12

*Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*,
840 F.2d 685 (9th Cir. 1988) ...............................................................................10, 11

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*,
711 F. Supp. 2d 1074 (C.D. Cal. 2010) ...................................................................15

*Franz Haas GmbH Srl v. Winebow Inc.*,
2026 WL 837288 (9th Cir. Mar. 26, 2026)...........................................................10, 11

*High Sharp Elec. Ltd. v. Semiconductor Mfg. Int'l Corp.*,
2026 WL 974517 (N.D. Cal. Apr. 10, 2026) ...........................................1, 10, 11, 14, 15

*Lang v. Morris*,
823 F. Supp. 2d 966 (N.D. Cal. 2011) .....................................................................15

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ............................................................................14, 15

*Ratha v. Phatthana Seafood Co.*,
35 F.4th 1159 (9th Cir. 2022) ..................................................................................12

*Voltage Pictures, LLC v. Gussi, S.A. de C.V.*,
92 F.4th 815 (9th Cir. 2024) ...........................................................................1, 8, 10

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir. 1977) ...................................................................................15

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980)..................................................................................................13

**Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 1, et seq. ..............................................................9, 11, 16

**Other Authorities**

Fed. R. Civ. P. 4..............................................................................................................1, 8, 9

Fed. R. Civ. P. 4(k)(2)............................................................................................................16

Fed. R. Civ. P. 5 .................................................................................................................1, 8, 10, 11

Fed. R. Civ. P. 12(b)(5) ..............................................................................................................10, 11

FRCP 81(a)(6)(b) .................................................................................................................................9

Hong Kong International Arbitration Centre Administered Arbitration Rules 2018 ...........................6, 11

Kate O'Keefe, *Blacklisted Chinese Chip Maker Does a Thriving Business With U.S.*, WALL ST. J. (Oct. 5, 2023, 10:00 AM), https://www.wsj.com/politics/national-security/blacklisted-chinese-chip-maker-does-a-thriving-business-with-u-s-f75cca55 ...................................................................................3

## I.    **<u>INTRODUCTION</u>**

Respondent SMIC New Technology Research & Development (Shanghai) Corporation ("Respondent" or "NTRD") argues in its Motion to Dismiss (Dkt. 23; "Motion" or "Mot.") that Petitioner PDF Solutions, Inc.'s ("Petitioner" or "PDF") Petition to Confirm Arbitration Award (Dkt. 1; "Petition") should be dismissed for two reasons: "(1) ineffective service of process and (2) lack of personal jurisdiction." Dkt. 23 ("Mot.") at 1. The facts and law do not support Respondent's Motion on either point.

First, the Petition was properly served on Respondent under Rule 5, which the 9th Circuit recently held is the Federal Rule that governs service of petitions to confirm arbitration awards on foreign parties like NTRD. In its Motion, Respondent relies on Rule 4 and cites the *High Sharp* case, where the plaintiff brought an action for damages and declaratory relief, not a petition to confirm an arbitration award like Petitioner seeks in this case. As explicitly and extensively discussed by the 9th Circuit in its 2024 *Voltage Pictures* decision, addressed in detail below, that distinction is critical. Here, notice of the Petition was provided to three different sets of Respondent's attorneys: (i) the attorneys that represented it in the underlying arbitration; (ii) the attorneys that represent it in the Hong Kong set aside application matter; and, (iii) the attorneys that represent it in this matter). Each of these separately and independently complied with Rule 5's service requirement. Thus, effective service of the Petition on Respondent was made.

Second, the Court has at least specific personal jurisdiction over Respondent because it negotiated the terms for and performed its obligations under the agreement between the parties that is the subject of the arbitration award Petitioner seeks to have confirmed in California. For example, Respondent's representatives came to the Bay Area of California several times to meet with Petitioner's CEO and other employees to discuss the scope of the work that was to be performed by Petitioner for Respondent under the agreement. Respondent also performed its only obligation under the agreement (to pay Petitioner for its services) in California by wiring payment to Petitioner's California based banking account. Petitioner also believes the Court has general personal jurisdiction over Respondent but admits it does not have access to all of the relevant evidence that would shine light on the issue. Such evidence is only in the hands of Respondent and its affiliated entities. For that reason, the Court should grant leave to Petitioner to conduct jurisdictional discovery so that a fulsome evidentiary record can be developed.

Respondent notifies the Court that if its motion is denied, it intends to move for a stay. Petitioner

cannot respond to a hypothetical motion that has not yet been filed, but generally opposes any further delay of this matter, as it has been years since Respondent intentionally breached the agreement between the parties by failing to pay Petitioner tens of millions of dollars that are owed. Any further delay would only continue to cause substantial harm to Petitioner.

## II.    STATEMENT OF FACTS

The below statement of facts is supported by the allegations in and exhibits filed with the Petition (Dkt. 1, 3) as well as the Declarations of John Kibarian and Daniel Ravicher submitted concurrently herewith and their exhibits.

### A.    Respondent Negotiated and Performed The Underlying Agreement In This District

The arbitration award that is the subject of the Petition relates to a 2016 Project Agreement ("Project Agreement" or "PA") between PDF and Respondent. The first page of the PA states its "Effective Date" is July 1, 2016, (Dkt. 3, Ex. 1 at 1) but the PA was not actually executed by the parties until December 2016. Declaration of John Kibarian ("Kibarian Decl.") ¶ 5.

The PA was not negotiated between Petitioner and NTRD, however. Kibarian Decl. ¶ 6. Rather, it was negotiated between Petitioner and a Chinese company named Semiconductor Manufacturing International Corporation ("SMIC") that owned and controlled NTRD. *Id*. NTRD was created by SMIC for accounting purposes to hide expenses for SMIC so that SMIC would appear to be more profitable. *Id*.

At the time of the PA, NTRD was known as SMIC Advanced Technology Research & Development (Shanghai) Corporation ("ATD"), which is the named counterparty to the PA. Dkt. 3, Ex. 1. NTRD and ATD can thus be used interchangeably.

The parties that actually negotiated the PA were PDF and SMIC, not PDF and NTRD. Kibarian Decl. ¶ 8. This was because the PA defines a specific project to be performed by PDF for SMIC under the general terms of a previously entered into 2010 Professional Services Agreement ("PSA") between PDF and SMIC. *Id*.; Dkt.3, Ex. 2. At the time of the negotiations, NTRD did not exist. Kibarian Decl. ¶ 8.

The PSA is a master agreement between Petitioner and SMIC through which SMIC would engage Petitioner to perform certain services that would be described in later separate project agreements like the PA. Dkt. 3, Ex. 3; Kibarian Decl. ¶ 9. The PSA itself does not provide for any actual work to be performed, but instead merely lays out the structure of a relationship between Petitioner and SMIC under which SMIC

could then request work be done for specific projects. *Id*. To this end, the PSA expressly provides that separate project agreements would be entered into by Petitioner and SMIC for every specific project that SMIC wanted Petitioner to perform. *Id*. These separate and specific "project agreements" would refer to and incorporate the PSA for its general terms and then define the specific scope and additional terms of each specific project. *Id*. Such additional terms would include, for example, the payments SMIC would make to Petitioner for its work on the project. *Id*. The PA at the center of this dispute is one such "project agreement" entered into under the general terms of the PSA. Dkt. 3, Ex. 2.

For Petitioner's semiconductor fabrication customers like SMIC, Petitioner's products and services provide the ability to better serve their customers who do not have fabrication capabilities. Kibarian Decl. ¶ 10. SMIC has several such customers in the United States and California specifically. *Id*. As described by the Wall Street Journal in its October 2023 article titled "Blacklisted Chinese Chip Maker Does a Thriving Business With U.S.", despite various condemnations by the U.S. government, "its business with the U.S. is booming." See https://www.wsj.com/politics/national-security/blacklisted-chinese-chip-maker-does-a-thriving-business-with-u-s-f75cca55 (last visited July 8, 2026). As detailed by the WSJ article, "Semiconductor Manufacturing International Corp. last year grabbed a record $1.5 billion in revenue—a fifth of its overall sales—from American semiconductor-design companies that hire SMIC to make their chips," because "None of Washington's various measures bars U.S. companies from doing business with SMIC." *Id*. One of SMIC's largest customers is Qualcomm, a California company headquartered in San Diego. *Id*.

The PA that is at the heart of the arbitration award that Petitioner seeks to confirm in this matter relates to a project referred to as "14nm." Kibarian Decl. ¶ 11. Another project performed for SMIC through a separate project agreement under the PSA was referred to as "28nm." *Id*.

In September of 2014, Petitioner's President and CEO John Kibarian met with SMIC's then CEO and Executive Director, Dr. Tzu-Yin Chiu, to discuss the ongoing relationship between PDF and SMIC and specifically the 28nm project. Kibarian Decl. ¶ 12. This meeting took place at the offices of SMIC Americas ("SMIC Americas") in San Jose. *Id*. At that meeting, Petitioner and SMIC also discussed the possibility of the 14nm project that would become the subject of the PA. *Id*.

Even though SMIC Americas was not a named party to the PSA or PA, Petitioner's CEO and other

representatives were assured that any meetings or negotiations between Petitioner and SMIC that took place at SMIC Americas' offices in San Jose would be confidential because SMIC owned and controlled SMIC Americas. Kibarian Decl. ¶ 11. Indeed, in a September 2014 email from Chiu to Kibarian, Chiu referred to SMIC Americas' office in San Jose as the "SMIC Office." Kibarian Decl. ¶ 14, Ex. 1. Chiu also provided the address of the "SMIC Office" as "1732 North First St., Suite 200", *Id.*, which is the address of SMIC Americas' office where the Petition was served by hand and mail. Dkt. 13.

Subsequent to that September 2014 meeting at SMIC Americas, Chiu and Kibarian had several further discussions about the 14nm project, often intertwined with discussions about the 28nm project. Kibarian Decl. ¶ 15. Many of these discussions happened in the Bay Area, including at both Petitioner's offices and SMIC/SMIC Americas' offices in San Jose. *Id*. Chiu and Kibarian also met in person at Petitioner's lab in Milpitas. *Id*. One specific meeting that took place at SMIC Americas' office took place in or around February 2015. Kibarian Decl. ¶ 16.

In or around June 2015, Petitioner's Kibarian met with Mr. Mike Rekuc, who was then SMIC's EVP Worldwide Sales & Marketing, regarding the 14nm project. Kibarian Decl. ¶ 17. Rekuc had previously been President of SMIC Americas where he was responsible for all sales in the Americas region. *Id*. His new position at SMIC made him responsible for sales worldwide, including the U.S.. *Id*.

SMIC's Rekuc told Kibarian at that meeting that SMIC and SMIC Americas were one in the same company, that there was no distinction between them. Kibarian Decl. ¶ 18. As Rekuc explained it to Kibarian, SMIC Americas' role was to be a mere interface for SMIC to sell its services to United States fabless customers. *Id*.

The June 2015 meeting was one of several meetings Kibarian had with Rekuc regarding the 14nm project (and the 28nm project). Kibarian Decl. ¶ 19. Some of those meetings took place in California while others took place in China. *Id*. Rekuc's desire was to use Petitioner's services to help improve the satisfaction of SMIC's customers in the United States. *Id*.

Between December 2015 and June 2016, negotiations regarding the 14nm project matured to the point that the parties began discussing specific terms for the PA. Kibarian Decl. ¶ 20. But the discussion of specific terms was not when the negotiations began, because Petitioner went ahead and began providing 14nm related services to SMIC and NTRD in July 2016, well before the PA was signed in December

2016. *Id.*

SMIC always intended to directly benefit from the PA. Kibarian Decl. ¶ 21. This is why SMIC's CEO negotiated the PA directly with Petitioner's CEO. Attached to Kibarian's declaration is a September 2016 email Chiu wrote to Kibarian and other Petitioner employees in which Chiu said he and Kibarian would resolve "the final gaps" in any remaining issues for finalizing the PA. *Id.*; Kibarian Decl. Ex. 2.

Also attached to Kibarian's declaration is an October 2016 email from another employee of SMIC named Hong Wu to a PDF employee named Steve Morstad in which Wu states, "We will put PDF's CV design documentation in a secured way which can be accessed only by authorized SMIC/ATD people. … People need authorization to view such documents and these authorized people are defined as the SMIC engineers who have 'access' to PDF CV design documentation." Kibarian Decl. ¶ 22; Ex. 3. As admitted by SMIC's Wu in his email, "SMIC's engineers", not just ATD/NTRD, would have access to PDF's design documentation. Kibarian Decl. ¶ 23. Further, the notation of "SMIC/ATD" confirms ATD (now NTRD) was never a separate entity from SMIC and that SMIC always intended to directly benefit from the PA even though it was not a party thereto. *Id.*

Further, also attached to Kibarian's declaration is a November 2016 email from Wu to a Petitioner that says, "The PA is now in the hands of the SMIC top management. We will try our best to get all the signatures within 3 days or not later than this week." Kibarian Decl. ¶ 24; Ex. 4. This email reaffirms the fact that it was always SMIC that was negotiating the PA with PDF, not ATD (now NTRD), as this email admits it was SMIC itself (through its "top management") that would approve and sign the PA. *Id.*

After the PA was executed by the parties, SMIC, not NTRD, made a payment to Petitioner thereunder by wiring funds into petitioner's bank account in California. Kibarian Decl. ¶ 25. Petitioner's relevant bank account statement is attached to Kibarian's declaration. Kibarian Decl. ¶ 25, Ex. 5. The exhibit proves the payment was made by SMIC, not NTRD, because the name of the payee starts with the entire word "Semiconductor", which is only present in the legal name of SMIC. *Id.* Payments by ATD/NTRD would have been identified as coming from a legal entity whose name beings with the four letters "SMIC …", not the entire word "Semiconductor". *Id.*

**B.      Notice of the Petition Was Served on Three Sets of Respondent's Counsel**

The award Petitioner seeks to have confirmed by the Court in this matter was issued from an arbitration that was administered under the Hong Kong International Arbitration Centre Administered Arbitration Rules 2018. Dkt. 3, Ex. 1 at 1 ("In the Matter of an Arbitration Pursuant to the Hong Kong International Arbitration Centre Administered Arbitration Rules 2018") ("HKIAC 2018 Rules"). A copy of the HKIAC 2018 Rules is attached to the Declaration of Daniel Ravicher submitted concurrently herewith as Ex. 1.

Not only did Respondent accept the HKIAC 2018 Rules by participating in the arbitration, in the PSA that was accepted by Respondent in the PA, the Disputes clause in Section 11.7 states in relevant part, "the Dispute shall be settled by binding arbitration … conducted by the Hong Kong International Arbitration Center, in accordance with its rules." Dkt. 3, Ex. 3 at 7.

Rule 3.1 of the HKIAC 2018 Rules states, "Any written communication pursuant to these Rules shall be deemed to be received by a party, arbitrator, emergency arbitrator or HKIAC if: (a) communicated to the address, facsimile number and/or email address communicated by the addressee or its representative in the arbitration." Ravicher Decl. Ex. 1 at 3.

Further, in the PSA that was accepted by Respondent in the PA, the Notices provision in Section 11.2 states, in part, "All notices required or permitted under this Agreement shall be in writing and shall be deemed effectively given: … (ii) when sent by electronic mail or facsimile if sent during normal business hours of the recipient, (and if not, then on the next business day), with written evidence of receipt." Dkt. 3, Ex. 3 at 6-7.

Thus, Respondent consented to accept all "written communications" relating to the arbitration and any Notices relating to the PA by email, including emails sent to Respondent's "representative in the arbitration."

Petitioner's counsel provided notice of and a copy of the Petition and all of its exhibits to three different sets of counsel for Respondent.

First, the attorneys that represented Respondent in the arbitration are identified in the award as Jonathan Hersey, Christopher Tung, Jay C. Chiu, Sacha M. Cheong, Cindy Ha, Susan Munro, and Charlotte Cheng of the law firm K&L Gates. Dkt. 3, Ex. 1 at 9. Attached to the Ravicher Declaration is

an email chain with two emails: (i) one sent on April 7, 2026, by Petitioner's counsel Daniel Ravicher to all of those attorneys providing notice of this action and a link to all of the initiating papers, including the Petition and all exhibits attached thereto; and, (ii) one sent on April 16, 2026, by Respondent's counsel in the arbitration Tung to Ravicher replying to the first email, which is written evidence of receipt. Ravicher Decl. at ¶ 4 and 8, Ex. 2.

Second, Bryan Chan at DLA Piper sent an email on March 5, 2026, to Peter Yuen at Fangda Law, which represents Petitioner in the High Court of Hong Kong set aside application filed by NTRD, copying Ernest Yang and Edison Li at DLA Piper, identifying those three attorneys at DLA Piper as representing Respondent in that matter. Ravicher Decl. ¶ 5, Ex. 3. In his email, Chan provides a link to the relevant documents because they were too large in size to attach to his email. *Id*. Attached to the Ravicher Declaration as Exhibit 4 is an email that Ravicher sent on April 7, 2026, to attorneys Bryan Chan, Ernest Yang, and Edison Li of DLA Piper providing them notice of this action and a link to download all of the initiating papers. Ravicher Decl. ¶ 6 and 8, Ex. 4.

Third, John Schreiber of the law firm Winston & Strawn, represents Respondent in this matter. Mot. at 1, 2, and 12. Attached to the Ravicher Declaration is an email chain containing three emails. Ravicher Decl. ¶ 7, Ex. 5. The second email is one that Ravicher sent on April 15, 2026, replying to attorney Schreiber, who already had notice of this action, with and a link to download all of the initiating papers. *Id*. The first email was sent later that same day by Schreiber replying to Ravicher's email, which is written evidence of receipt.

In each of the three emails sent by Ravicher to counsel for NTRD, a link to all of the initiating papers in this matter, including the Petition and all Exhibits thereto, was provided.

## III.    **ARGUMENT**

### A.    **Petitioner Properly Served the Petition on Respondent**

Respondent's assertion that PDF "failed to serve" it (Mot. at 3) is incorrect because Respondent failed to mention, much less address, binding Ninth Circuit precedent holding that service of a petition to confirm an arbitration award on a foreign party is governed by FRCP Rule 5, ***not*** FRCP Rule 4 that is the focus of Respondent's argument on this point. Here, PDF's service of the Petition on Respondent (a foreign party) through its counsel complied with FRCP Rule 5, making such service valid.

### 1.    Rule 5, Not Rule 4, Governs Service of a Petition to Confirm Arbitration Award on a Foreign Party

NTRD's argument that Petitioner has not properly served the Petition is based solely on Petitioner's purported "fail[ure] to effectively serve SMIC *pursuant to Rule 4*." Mot. at 3 (emphasis supplied). However, this argument fails as a matter of law because it is premised on the (incorrect) assertion that FRCP Rule 4 governs service here. It does not. As the seminal Ninth Circuit case *Voltage Pictures, LLC v. Gussi, S.A. de C.V.*, 92 F.4th 815, 830-32 (9th Cir. 2024) held, it is FRCP Rule 5 that governs service of a notice of motion to confirm an arbitration award on a foreign party. NTRD completely neglects in its Motion to even mention *Voltage Pictures* and erroneously focuses on FRCP Rule 4 instead, which is entirely irrelevant to this Court's analysis of whether PDF's service was proper.

In *Voltage Pictures*, petitioner (a film production and distribution LLC) filed an application to confirm a non-domestic arbitration award against respondent (a Mexican distributor) over distribution rights of a film. 92 F.4th 815, 819-20. In appealing the district court's confirmation of the award, respondent there argued, *inter alia*, that service of the motion to confirm was insufficient under federal law. *Id*. at 820. In affirming the lower court's decision,[1] the Ninth Circuit noted that while "Rule 4 of the Federal Rules of Civil Procedure governs service of a summons and a complaint in federal district court…**this case does not concern the service of summons and a complaint. Rather, it concerns the service of a prevailing party's notice of motion to confirm an arbitral award**" and thus the Federal Arbitration Act (FAA) – and its relationship to the FRCP rules – must be considered in determining the

---

[1] Although the Ninth Circuit affirmed the lower court's confirmation of the arbitration award, it departed from the district court's finding that California law applied to service of a confirmation motion. Specifically, the Ninth Circuit held that "[w]hen a party files an action in federal district court, federal procedural law generally governs service…unless the party-to-be-served waived its protections." 92 F.4th at 824 (internal citations omitted). Since the parties' contract did not contain any such waiver and the petitioner filed its confirmation in federal court, the court ruled that federal law applied to the service of the motion. *Id*. This ruling applies with equal force here, as the parties' contracts do not contain any waiver of federal procedural law and PDF filed its notice of confirmation in federal court.

proper manner of service.[2] *Id*. at 825-26 (emphasis supplied).

The court then analyzed the applicable provisions of the FAA concerning service of an application to confirm an arbitral award. Specifically, Section 6 of the FAA provides that "[any] application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. Section 6; 92 F.4th at 826. Section 9 of the FAA provides in relevant part that "[n]otice of the application [to confirm an arbitral award] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding…If the adverse party shall be a nonresident, then the notice of application shall be served by the marshal of any district within which the adverse party may be found in like manner as other process of court." 9 U.S.C. Section 9; 92 F.4th at 826.

Recognizing that it is "impossible" for a U.S. marshal to serve a party "outside of the territorial United States," 92 F.4th at 829, the Ninth Circuit reasoned that because Section 9's "nonresident service provision does not provide a viable method of service of notice on adverse parties who are not available for service within the United States, we must rely on Section 6's statutory mandate that '[a]ny application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions…' **That language plainly refers to the reigning rules governing service of written motions and notices in federal court, which today is found in [FRCP] Rule 5…Accordingly, we hold that [FRCP] Rule 5(b) – the federal procedural law governing how service of a motion is made – is the default rule for serving notice of an application to confirm an award**" when the adverse party is

---

[2] The court's decision to analyze the relationship between the FAA and the FRCP was also based on FRCP 81(a)(6)(b), which provides that the FRCP governs proceedings under the FAA "relating to arbitration," except as the FAA provides other procedures. Fed. R. Civ. Proc.81(a)(6)(b); 92 F.4th at 825-26. Since the FAA contains specific provisions relating to service of an application to confirm an arbitral award, the court examined those provisions in addition to the relevant FRCP rules. 92 F.4th at 825-26.

unavailable for service within the territorial United States. 92 F.4th at 831 (emphasis supplied) (internal citations omitted).

NTRD argues in its Motion that it is, "a Chinese company, incorporated under the law of the People's Republic of China, that operates solely in China and has no offices, property, assets or employees located in the United States…" Mot. at 1. Thus, if the Court takes NTRD at its word, NTRD is as a result unavailable for service in the territorial United States. Under *Voltage Pictures*, FRCP Rule 5 thus governs Petitioner's service of the Petition to Confirm Arbitration Award. *See also Franz Haas GmbH Srl v. Winebow Inc.*, 2026 WL 837288, *1 (9th Cir. Mar. 26, 2026) (noting that a petition to confirm an arbitration award "**is treated procedurally as a motion rather than a pleading**" and thus "shall be made and heard in the manner provided by law **for the making and hearing of motions**…") (emphasis supplied).

NTRD incorrectly relies on FRCP Rule 12(b)(5), *High Sharp Electronic Ltd. v. Semiconductor Mfg. Int'l Corp.*, 2026 WL 974517 (N.D. Cal. Apr. 10, 2026), and *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988), as support for the argument that FRCP Rule 4 applies to service of a notice of a motion to confirm an arbitral award. Mot. at 3, 6. However, such reliance is inapposite because FRCP Rule 12(b), *High Sharp*, and *Direct Mail Specialists* all pertain to service of a complaint, which the law regards as critically distinct from a petition to confirm an arbitration award. *See Franz Haas GmbH Srl*, 2026 WL 837288, *1 (petition to confirm an arbitration award "is treated procedurally as a motion rather than a pleading").

### 2.    Petitioner Properly Served the Petition on Respondent's Attorneys

FRCP Rule 5 provides that "[i]f a party is represented by an attorney, service under this rule must be made on the attorney…" Fed. R. Civ. P. 5(b)(1). It further provides that "[a] paper is served under this rule by… (E) … sending it by other electronic means that the person consented to in writing … or (F) delivering it by any other means that the person consented to in writing." Fed. R. Civ. P. 5(b)(2).

Here, Petitioner emailed notice of the Petition and provided a link to download the Petition and all of its Exhibits to three different sets of attorneys who represent NTRD in relation to the arbitration in which the award Petitioner seeks to have confirmed was issued, namely Respondent's counsel in (i) the arbitration, (ii) the Hong Kong set aside proceeding, and (iii) this proceeding. Ravicher Decl. ¶¶ 4-8, Exs. 2-5. NTRD consented to receive notices by email both by (i) adopting the PSA, including its Notices section that permits notices to be sent by email, when entering the PA and (ii) by participating in the HKIAC arbitration governed by its rules, and in particular HKIAC 2018 Rule 3.1 deeming written communications received when sent by email to a party's representative in the arbitration. *Id*. Ex. 1 at 3.

Accordingly, the Petition was "sufficiently served in accordance with Section 6 [of the FAA] and [FRCP] Rule 5", service of notice "was thus sufficient under federal law," and this Court has jurisdiction over NTRD as though it has appeared generally in this proceeding. 92 F.4th at 832.

**B.      The Court Has Personal Jurisdiction Over Respondent**

**1.      The Court Has Specific Personal Jurisdiction Over Respondent**

To establish specific jurisdiction, Petitioner need only show that Respondent (1) "either purposefully direct[ed] his activities toward the forum or purposefully avail[ed] himself of the privileges of conducting activities in the forum," (2) the Petition "arises out of or relates to" Respondent's forum-related activities, and (3) "the exercise of jurisdiction must comport with fair play and substantial justice." *Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1171 (9th Cir. 2022) (citations omitted).

Purposeful Direction of Activity or Availment of Privileges. As discussed in the Statement of Facts, Supra II.A., Petitioner has provided the Court with testamentary and documentary evidence of the following acts of NTRD relating to the PA in California: multiple in-person meetings in San Jose; additional meeting in Milpitas; SMIC's CEO personally coming to California and meeting with Petitioner's CEO to discuss the scope of the PA; SMIC's EVP of Worldwide Sales also meeting with Petitioner to discuss the scope of the PA in California; and, NTRD (through SMIC) making a payment under the PA by wiring funds to Petitioner's California bank account.

While these acts were performed by SMIC, it did so either as (i) the predecessor of NTRD prior to its creation or (ii) the agent of NTRD acting on its behalf after its creation. Petitioner does not have access (yet) to the corporate records of NTRD to determine when it became an entity, but prior to its creation as a separate entity it was part of SMIC and SMIC's actions therefore are imputed to it for purposes of determining personal jurisdiction. After NTRD's creation, SMIC acted as its agent to negotiate and perform the PA. Thus, the actions of SMIC are properly considered the actions of NTRD.

As a matter of corporate law, prior to its creation as a separate entity by SMIC, the unincorporated NTRD was part of SMIC. There was not yet any separate entity. And, once NTRD was created as a separate entity, SMIC's actions as an agent on its behalf were at least impliedly, if not actually, with NTRD's authority and therefore should be imputed to NTRD. "Agency relationships ... may be relevant to the existence of specific jurisdiction" – *e.g.*, "a corporation can purposefully avail itself of a forum by directing its agents … to take action there." *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). When NTRD used SMIC to negotiate and perform the PA on its behalf, SMIC's actions are relevant to whether a court has personal jurisdiction over NTRD relating to the PA.

Further, Respondent purposefully sought benefits from the state of California because the evidence provided by Petitioner shows that NTRD entered into the PA so that SMIC could acquire Petitioner's technology and services to better serve its U.S. customers, which includes Qualcomm in California. The PA therefore was not merely connected to California because Petitioner is located here, but rather it was entered into by NTRD to strengthen SMIC's California business. This is precisely the commercial targeting that supports a finding of purposeful availment.

Respondent makes much of the fact that Petitioner performed its services under the PA in China. But Petitioner's direction of activity is irrelevant. It is only Respondent's actions that matter, and the only thing NTRD is obligated to do under the PA is pay Petitioner, which it did by wiring funds into Petitioner's California bank account.

<u>Petition Arises Out of or Relates to Forum-Related Activities</u>. All of the above identified activities and availment relate to the PA that is the subject of the arbitration award Petitioner seeks to have confirmed by the Court. Respondent does not even dispute this prong in its Motion.

Fair Play and Substantial Justice. Jurisdiction over NTRD to confirm the arbitration award would not "offend traditional notions of fair play and substantial justice" nor violate "[t]he protection against inconvenient litigation," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980), given the above identified purposeful activities in California. Further, this issue is much less of a concern for a petition to confirm an arbitration award than it is in the typical litigation context, because here there is no possibility of formal discovery, a trial, motions, etc. This is a very simple and straightforward administrative action brought under the Federal Arbitration Act to confirm an award that was already rendered against Respondent after 5 years of lengthy and intensive arbitration, where Respondent was represented by competent counsel and had access to all of the rules of the HKIAC arbitration process to which it agreed to participate in the PSA that was accepted by NTRD when it entered into the PA.

NTRD further agreed that the PA and "all disputes arising under or related to this Agreement, shall be governed by the laws of the State of California (USA), without regard to any rules governing conflicts of laws." Dkt. 3, Ex 3 at 7 (Section 11.8 Governing Law of the PSA). Thus, it is not unfair or unjust to apply the law of California to NTRD when it agreed that such would be the case. NTRD also agreed that "Judgment upon the award rendered by the arbitrator(s) may be entered by any public court of competent jurisdiction." *Id*. (Section 11.7 Disputes).

### 2.      The Court Also Has General Jurisdiction Over Respondent

Here, there is no dispute that SMIC Americas (a subsidiary of SMIC) is subject to general personal jurisdiction in this Court given it is a California corporation with its principal address in California.

"A subsidiary's contacts with the forum state can only be imputed to its foreign parent 'upon a showing that the subsidiary is an alter ego of its parent.'" *High Sharp Electronic Ltd. v. Semiconductor Mfg. Int'l Corp.*, 2026 WL 974517 (N.D. Cal. Apr. 10, 2026) (quoting *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015)). To do this, "a plaintiff must make a prima facie case '(1) that there is such a unity of interest and ownership that the separate personalities [of the two entities] no longer exist, and (2) that failure to disregard [their separate identities] would result in fraud or injustice.'" *Id*. (quoting *Ranza*, 793 F.3d at 1073).

Petitioner has submitted evidence that a high ranking SMIC executive admitted to Petitioner that SMIC and SMIC Americas (a subsidiary of SMIC) were one in the same company, that there is no

distinction between them. Petitioner has also submitted evidence in the form of then-SMIC's CEO own words saying SMIC Americas' office in San Jose was "SMIC's Office."

This evidence supports a finding that there is a unity of interest between SMIC and SMIC Americas. Imputing SMIC America's contacts with California to SMIC would not be unjust given SMIC's purposeful actions of using SMIC Americas to transact business in California

Further, Petitioner has submitted evidence that shows SMIC had NTRD enter into the PA on its behalf so that SMIC could use Petitioner's services to improve its sales of products to customers in California. The evidence also shows that NTRD was created merely for accounting purposes to make SMIC appear more profitable. Thus, there is also a unity of interest between SMIC and NTRD such that SMIC's contacts with California should be imputed to NTRD. Again, this would not be unjust because SMIC used NTRD to enter into the PA and NTRD willingly did so.

In short, the evidence provided by Petitioner shows that both SMIC Americas and NTRD are "mere instrumentalities" of SMIC and this the contacts of any of them with California should be imputed to all of them. *Ranza*, 793 F.3d at 1073.

### 3. Jurisdictional Discovery Is Appropriate if the Court Is Unsure About Whether it Has Personal Jurisdiction Over Respondent

In *High Sharp Elec. Ltd. v. Semiconductor Mfg. Int'l Corp.*, 2026 WL 974517 (N.D. Cal. Apr. 10, 2026), relied on by Respondent in its Motion, the Court cited *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074, 1093 (C.D. Cal. 2010) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)) for the proposition that, "A court may permit discovery to aid in determining whether it has personal jurisdiction." This Court also noted that "[d]iscovery should be granted, however, 'where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *High Sharp*, 2026 WL 974517 at 27 (*quoting Wells Fargo*, 556 F.2d at 430 n. 24). "A plaintiff need only present a 'colorable basis' for jurisdiction in order to obtain discovery, and a court abuses its discretion in denying discovery when it might well demonstrate jurisdictionally relevant facts." *Lang v. Morris*, 823 F. Supp. 2d 966, 979 (N.D. Cal. 2011) (citations and quotations omitted).

Here, Petitioner has presented a "colorable basis" for jurisdiction and therefore jurisdictional discovery should be granted if either "a more satisfactory showing of the facts is necessary" or "pertinent facts bearing on the question of jurisdiction are controverted."

Here, there are several facts that are controverted. First, in his declaration in support of Respondent's Motion, Mr. Yong Wang stated, "SMIC, Americas is not an agent … of SMIC New Technology and it does not conduct any business on SMIC New Technology's behalf." Dkt. 26 at ¶ 9. However, Petitioner's evidence is to the contrary because it shows that SMIC Americas provided NTRD confidential and secure offices in San Jose to use to negotiate the PA. SMIC Americas thus hosted Petitioner at its office in San Jose as an agent of NTRD. Further, Mr. Wang also states, "Nor is SMIC New Technology an agent … of SMIC, Americas." However, again, Petitioner disputes this fact, because the evidence submitted by Petitioner shows that the PA was entered into so that SMIC could use PDF's technology to improve SMIC's sales to customers in California through SMIC Americas. Petitioner has also provided evidence that SMIC's own employee Rekuc told Petitioner's CEO Kibarian that SMIC and SMIC Americas were one in the same company, that there was no distinction between them.

Woefully absent from any of the evidence submitted by Respondent is that which aids the Court in evaluating issues including facts relating to: (i) the degree of control exerted by SMIC over NTRD and SMIC Americas; (2) whether corporate separateness and formalities have been maintained between the three entities; and, (3) SMIC's and SMIC Americas agreements with customers like Qualcomm and suppliers like Petitioner in California.

Further, given the Petition is based on the FAA, a federal-law claim, Rule 4(k)(2) permits consideration of contacts across the entire country for personal jurisdiction purposes if Respondent is not already subject to personal jurisdiction in this or any other District. As such, Petitioner should be entitled to pursue discovery related to the entire country and not just California.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny NTRD's Motion to Dismiss or at least grant Petitioner leave to conduct jurisdictional discovery.

Dated: July 8, 2026

**ZEISLER PLLC**

By: /s/ Daniel Ravicher
Daniel Ravicher
Sumana Wolf

*Attorneys for Petitioner PDF Solutions, Inc.*